DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas.
 {¶ 2} Appellants/cross-appellees, Michael Kott, Gregory Kott, and their businesses, Future Lawn, Inc, ("Future Lawn"), Clean Wood Recyling ("Clean Wood"), and Kott Enterprises, Ltd. ("Enterprises") engaged appellees/cross-appellants, Jack J. Brady and Brady, Coyle Schmidt, LLP, ("BCS") to perform legal services in various matters, beginning in 1997. One of the cases involved the defense of a suit filed by Sylvester Materials against the Kott corporations. In June 1999, the parties entered into a written fee agreement, which provided for hourly rates of $150 per hour for attorneys and $75 per hour for paralegals. The agreement also provided for a two percent per month charge on unpaid balances. The Kotts[1] paid the balance owed on their account at that time, over $45,000. BCS continued to provide legal services from the fall of 1999 until May 26, 2000, when the firm terminated the employment relationship because the Kotts had failed to pay on invoices according to the contract terms.
 {¶ 3} In May 2000, BCS sued to collect the balance owed on the Kotts' account, plus interest. The Kotts answered and set forth various defenses and counterclaims, including breach of contract and unenforceability of the contract, excessive fees, alleged legal malpractice, wrongful attachment of Michael's and Gregory's bank accounts and conversion. The trial court granted summary judgment to BCS on Counts 3 and 4 of the Kotts' counterclaim, but denied summary judgment on BCS' claim for fees, finding that issues of fact remained in dispute.
 {¶ 4} Meanwhile, on May 15, 2002, the Kotts filed a separate complaint with jury demand against Jack J. Brady and BCS, alleging legal malpractice. On September 3, 2002, by agreement of the parties, BCS voluntarily dismissed its collection action without prejudice and refiled the same day, merging all the pleadings from the original case into the second. The trial court consolidated the two actions in April 2003.
 {¶ 5} On March 7, 2003, BCS again filed a motion for summary judgment on Counts 3 and 4 of the Kotts' counterclaim. On March 20, 2003, BCS filed a summary judgment motion regarding the Kotts' legal malpractice claims.
 {¶ 6} The Kotts were originally represented in both suits by Jack Fynes of the Shumaker, Loop, and Kendrick law firm. On May 26, 2003, Fynes filed a motion to withdraw as counsel because BCS had informed him of its intent to file a third-party complaint against Fynes and his firm. Citing DR5-102, Fynes sought to withdraw since he or members of his firm might be called as witnesses in the suit, a potential conflict with his continuing representation of the Kotts. Fynes also requested an extension of time to respond to various motions filed by BCS. The trial court granted both motions, extending the time for response to the motions until April 7, 2003. On April 4, 2003, the Kotts filed a single motion pro se, on behalf of themselves and the corporations, requesting a further extension of time to find alternate counsel and to respond to the pending motions. The trial court never specifically ruled on this motion.
 {¶ 7} On April 25, 2003, BCS filed a motion to dismiss or for partial summary judgment as to Counts 1 and 2 of the Kotts' counterclaim. The firm filed another summary judgment motion on April 28, 2003 on its claim for breach of the fee contract.
 {¶ 8} New counsel for the Kotts, Bernard K. Bauer, entered an appearance on May 12, 2003 and requested that the May 19, 2003 trial date be vacated. He also requested another extension of time within which to respond to the various pending motions. The trial court vacated the trial date, but ultimately denied appellants' motion for an extension of time to respond to appellees' motions.
 {¶ 9} On June 12, 2003, the trial court granted summary judgment on Counts 1 and 2 of the counterclaim and on BCS's claims for payment of fees. In July 2003, the Kotts filed a motion for reconsideration of the grant of summary judgment and dismissal of their counterclaims, attaching arguments and documents responding in opposition to the original motions. The Kotts also filed a cross-motion for summary judgment. The court denied the motion to reconsider and granted BCS's motion to dismiss the Kotts' response and cross-motion.
 {¶ 10} Over the Kotts' objections, the court then conducted a hearing on damages on November 14, 2003 without a jury. The trial court granted judgment on November 20, 2003 to BCS in the amount of $59,027.60 for legal services rendered, interest to be calculated on the statutory rate on that sum, and attorney fees of $15,000 for the current action.
 {¶ 11} Appellants now appeal from that judgment, setting forth the following six assignments of error:
 {¶ 12} "Assignment of Error No. 1
 {¶ 13} "The Trial Court abused its discretion and committed error prejudicial to the plaintiffs-appellants, by permitting counsel for the plaintiffs-appellants to withdraw as counsel less than two months before scheduled jury trial, without first conducting a hearing to protect the rights of the plaintiffs-appellants.
 {¶ 14} "Assignment of Error No. 2
 {¶ 15} "The Trial Court abused its discretion and committed error prejudicial to the plaintiffs-appellants, when it denied their motion to extend the time within which to respond to the defendants-appellees' motions for summary judgment.
 {¶ 16} "Assignment of Error No. 3
 {¶ 17} "The Trial Court abused its discretion and committed error prejudicial to the plaintiffs-appellants, when it granted summary judgment in favor of the defendantsappellees regarding claims and defenses for which the defendants-appellees had not sought leave to present.
 {¶ 18} "Assignment of Error No. 4
 {¶ 19} "The Trial Court abused its discretion and committed error prejudicial to the plaintiffs-appellants, when it denied their motion for reconsideration.
 {¶ 20} "Assignment of Error No. 5
 {¶ 21} "As a matter of law, the Trial Court committed error prejudicial to the plaintiffs-appellants, by conducting the "damage assessment hearing" of November 14, 2003, without a jury.
 {¶ 22} "Assignment of Error No. 6
 {¶ 23} "As a matter of law, the Trial Court committed error prejudicial to the plaintiffs-appellants in its determination of damages which it assessed against them."
 {¶ 24} Appellees argue the following cross-assignment of error:
 {¶ 25} "The trial court erred in failing to award prejudgment interest on the judgment [sic] awarding damages owing under the contract for legal services, as an award of prejudgment interest is required under section1343.03(a) of the revised code [sic] at the contract rate of two percent (2%) per month on the contract damage award."
 {¶ 26} I.
 {¶ 27} In the first assignment of error, appellants argue that the trial court erred in permitting their counsel to withdraw less than two months from trial. Appellants contend that the disciplinary rules impose a duty on the trial court to conduct a hearing to determine whether their case would be prejudiced by counsel's withdrawal. We disagree.
 {¶ 28} A trial counsel's withdrawal motion is committed to the sound discretion of the trial court. See State v. Cowans (1999),87 Ohio St.3d 68, 73. A "trial court has no obligation beyond assuring that the party is not prejudiced by the attorney's withdrawal. No rule exists requiring the court to allow the party to be heard on the issue of withdrawal." Walton v. Shelangoski (June 22, 1995), 8th Dist. No. 67518. An appellate court will not reverse the trial court's decision absent an abuse of its discretion. State v. Murphy (2001), 91 Ohio St.3d 516, 523. The term "abuse of discretion" implies that the court's decision was "unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 29} There is no generalized right to counsel in civil litigation.State ex rel. Jenkins v. Stern (1987), 33 Ohio St.3d 108, 110, citing toPotashnick v. Port City Constr. Co. (C.A. 5, 1980), 609 F. 2d 1101, certiorari denied (1980), 449 U.S. 820. "[C]ertain istinctions can be made between the rights of civil litigants and those of criminal defendants. A criminal defendant's right to counsel arises out of the sixth amendment, and includes the right to appointed counsel when necessary. * * * A civil litigant's right to retain counsel is rooted in fifth amendment notions of due process * * * A criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights." (Citations omitted.) Portashnik, supra, at 1118.
 {¶ 30} The attorney-client relationship is consensual, subject to termination by acts of either party. Mobberly v. Hendricks (1994),98 Ohio App.3d 839, 843, citing to Brown v. Johnstone (1982),5 Ohio App.3d 165, 166-167. A client may terminate the relationship at any time. Ross v. Woyan (1980), 1 Ohio App.3d 39, 41. An attorney, however, is not free to withdraw from the relationship absent notice to his client and, if required by the rules of court where the attorney is representing the client, permission from the court. DR 2-110A(1) and (2). DR 2-110(A)(2) of the Code of Professional Responsibility provides that:
 {¶ 31} "(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."
 {¶ 32} The purpose of DR 2-110(A)(1) and(2) is to assure that a client is not prejudiced as a result of the withdrawal of counsel. See Bennettv. Bennett (1993), 86 Ohio App.3d 343, 347 (trial court abused its discretion in permitting counsel to withdraw immediately prior to show cause hearing). The disciplinary rules also protect the public interest and ensure that members of the bar are competent to practice a profession imbued with the public trust. Disciplinary Counsel v. Trumbo (1996),76 Ohio St.3d 369, 372. The power to determine violations of the Disciplinary Rules, however, is reserved to the Supreme Court of Ohio. See Gov. Bar R.V(22); Fred Siegel Co., L.P.A. v. Arter Hadden (1999),85 Ohio St.3d 171, 178; Melling v. Stralka (1984), 12 Ohio St.3d 105, 106. If an attorney's representation has fallen below professional standards, a client may seek compensation through a malpractice action. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 122; Roth v. Roth (1989),65 Ohio App.3d 768, 776; GTE Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St.2d 146, 152.
 {¶ 33} In this case, on March 28, 2003, the trial court granted a motion to withdraw filed two days earlier by appellants' counsel, Jack Fynes. Fynes informed the court that BC S intended to file a third-party complaint against him and his law firm regarding issues in the case. Fynes cited DR5-102, which provides that a lawyer must withdraw from the case if he or she or any member of the firm "ought to be called as a witness on behalf of the client." As an officer of the court, Fynes' statements that further representation of the Kotts might become a conflict must be accepted by the trial court, unless evidence is presented to refute this. Fynes had sent notice to the clients of the conflict, advising them to seek new counsel "immediately." To further assist his clients, Fynes requested and the court granted an extension of time to respond to the pending motions, presumably to give the Kotts time to employ new legal representation. Nothing in the record indicates that the Kotts expressed an objection directly to the attorney or to the court regarding the withdrawal. Therefore, we cannot say that the circumstances required the trial to conduct a hearing before permitting Fynes to withdraw from the case.
 {¶ 34} Accordingly, the Kotts' first assignment of error is not well-taken.
 {¶ 35} II.
 {¶ 36} The Kotts argue in their second assignment of error that the trial court erred in denying their new attorney's motion for an extension of time to respond to the pending motions.
 {¶ 37} A trial court is granted discretion in permitting a party to file a pleading outside of the time guidelines set forth in the Civil Rules. Civ. R. 6 governs extensions of time and provides, in pertinent part: "When by these rules * * * an act is required * * * to be done * * * within a specified time, the court for cause shown may at any time in its discretion 1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, * * *." The party seeking additional time to respond to the motion for summary judgment must present sufficient reasons to demonstrate that a continuance is warranted. Glimcher v. Reinhorn (1991),68 Ohio App.3d 131, 138. The decision whether to grant a motion for extension of time lies within the broad discretion of the trial court and will be reversed on appeal only for an abuse of discretion. Civ.R. 6; see, also, Miller v. Lint (1980), 62 Ohio St.2d 209.
 {¶ 38} Civ.R. 56(F) also requires a party opposing summary judgment to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and the reasons given why it cannot present facts essential to its opposition of the motion." Gates Mills Invest.Co. v. Pepper Pike (1978), 59 Ohio App.2d 155, 169.
 {¶ 39} In this case, the trial court denied the extension of time because it was the third request for an extension, was not timely, and did not comport with Civ. R. 56(F). The Kotts filed their second request for an extension pro se, for themselves individually as well as on behalf of the corporations. Even though this would have technically been the unauthorized practice of law, the trial court did not strike the motion for this reason. Although the trial court did not rule on the second extension request, it did delay ruling on the pending motions and the third request for extension until June 12, 2003.
 {¶ 40} Generally, if the trial court fails to mention or rule on a motion or an objection, we presume that the objection or motion was overruled. Dayton Monetary Assoc. v. Becker (1998), 126 Ohio App.3d 527,539; Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 212. In this case, however, the trial court acted as if the second extension had been granted, specifically referring to the May 12, 2003 motion as the "third" request. Although the better practice is to explicitly rule upon motions seeking additional time to respond to motions for summary judgment, we do not find that the court's conduct here amounts to an abuse of discretion. The collection action had dragged on for three years and the Kotts had taken two and one-half months to find new counsel. In addition, neither the second or third motions was supported by affidavits and the third was filed more than a month beyond the deadline for filing a response. Consequently, on review of the entire record, we cannot say that the trial court abused its discretion in denying further requests to prolong the proceedings.
 {¶ 41} Accordingly, the Kotts second assignment of error is not well-taken.
 {¶ 42} III.
 {¶ 43} In the third assignment of error, the Kotts argue that the trial court erred in granting summary judgment as to claims and defenses for which BCS had not sought leave to present. The Kotts contend that because the case had been set for trial and BCS did not ask for leave to file summary judgment motions pursuant to Civ.R. 56(A), the trial court erred in entertaining its motions.
 {¶ 44} Summary judgment motions may be filed after the matter is set for pretrial or trial only with leave of the court. Civ.R. 56. Nevertheless, the decision to entertain a summary judgment motion, regardless of whether a required leave of court has been granted under Civ.R. 56(A), is within the sound discretion of the trial court. PhoenixTechs v. North Coast Latex Corp. (Dec. 13, 1995), 9th Dist. No. 17254;Brinkman v. Toledo (1992), 81 Ohio App.3d 429, 432; Indermill v.United Sav. (1982), 5 Ohio App.3d 243, 244. Accordingly, an appellate court will not reverse the court's decision in this case to entertain such a motion unless the decision was arbitrary, unreasonable, or unconscionable. See Brinkman, supra. The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary or unconscionable, more than just an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 45} Moreover, a party waives its right to appeal any error that the party failed to bring to the trial court's attention at a time when the court could address or remedy the error. See Lefort v. Century21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. Other Ohio appellate districts have held that the failure of a party to file a motion to strike an untimely motion for summary judgment or to otherwise interpose an objection to its consideration without leave of court constitutes a waiver of the untimeliness on appeal. See, e.g., OvercasherLandscaping Inc. v. Beaver Excavating Co. (July 6, 1993), Stark App. No. CA-9180; Hines v. Aetna Cas. Sur. Co. (Jan. 9, 1992), Cuyahoga App. No. 59600, citing Rodger v. McDonald's Restaurants of Ohio, Inc. (1982)8 Ohio App.3d 256, 258, fn. 7.
 {¶ 46} In this case, the Kotts did not move to strike the motions for summary judgment, thus, waiving any right to appeal the alleged error. Additionally, the trial court vacated the trial date and delayed ruling on the motions. Therefore, although the motions for summary judgment were filed without leave, the trial court was well within its discretion to accept and rule on them.
 {¶ 47} Accordingly, the Kotts third assignment of error is not well-taken.
 {¶ 48} IV.
 {¶ 49} In their fourth assignment of error, the Kotts claim that the trial court erred in denying their motion for reconsideration. We agree that the grant of summary judgment was not a final, appealable order since the issue of damages had not been determined. Therefore, the Kotts' motion for reconsideration was an appropriate method to request that the trial court review its prior ruling.
 {¶ 50} A trial court's decision whether to reconsider a previous interlocutory order is a matter of discretion and will not be reversed on appeal absent an abuse of that discretion. See Helman v. EPL Prolong,Inc. (2000), 139 Ohio App.3d 231, 241; Vanest v. Pillsbury Co.
(1997), 124 Ohio App.3d 525, 535. A trial court abuses its discretion only when it acts in a manner which was unreasonable, arbitrary, or unconscionable. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87. A trial court's judgment which is interlocutory, cannot be the subject of a motion for relief from judgment under Civ.R. 60(B) which only applies to final, appealable orders.
 {¶ 51} In this case, we agree that the grant of summary judgment on the issues of the Kotts' liability for payment on the contract, their legal malpractice claim, and their counterclaims, was interlocutory and not subject to the provisions of Civ.R. 60(B). See Noble v. Colwell
(1989), 44 Ohio St.3d 92, 96, fn5 (where the issue of liability has been determined, but a factual adjudication of relief is unresolved, the finding of liability is not a final appealable order.) Nevertheless, the Kotts apply the standards for Civ. R. 60(B), arguing that the rule should be "liberally construed with a view for effecting a just result." Here, the Kotts, in essence, sought reconsideration of the trial court's denial of their motion for extension of time to respond, upon the same basis as their original motion — newly hired counsel. They asserted that BCS had "coerced" their counsel "into filing a motion to withdraw as counsel by threatening to bring him in as a thirdparty defendant" if BCS's motion for summary judgment was denied. Nothing in the record supports this characterization of the events leading up to Fynes' withdrawal.
 {¶ 52} We have already determined that the trial court did not abuse its discretion in denying the request for an extension of time. The trial court was in the best position to observe the parties and assess the circumstances surrounding the Kotts' search for new counsel. The court determined that the Kotts had had sufficient time to find new counsel and that an extension was not warranted. Under an abuse of discretion standard, we may not substitute our judgment for that of the trial court's and decline to do so here.
 {¶ 53} Accordingly, the Kotts' fourth assignment of error is not well-taken.
 {¶ 54} V.
 {¶ 55} The Kotts contend in their fifth assignment of error that the trial court erred in conducting a hearing to determine damages without a jury.
 {¶ 56} R.C. § 2311.04 provides:
 {¶ 57} "Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only * * *, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure. * * * All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."
 {¶ 58} The construction and interpretation of written contracts is a matter of law. Long Beach Assn., Inc. v. Jones, 82 Ohio St.3d 574, 576, citing Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio,Inc. (1984), 15 Ohio St.3d 321, 322. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponse, Inc. v. FranklinCty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361. A court must give effect to the expressed intentions of the parties where a written instrument is unambiguous. United States Fid. Guar. Co. v.St. Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45, 55.
 {¶ 59} After granting summary judgment as to the contract for fees and the counterclaims, the only remaining issue was the application of the contract terms, and review of the invoices and evidence presented to determine the amounts owed. The rates and terms of the contract were not in dispute. Although the Kotts claim that questions of fact remain as to the "reasonableness" of the charges, they do not argue that the time spent was unreasonable. Rather, the Kotts contend that the work done by BSC "was not worth" what they were charged. In our view, this argument goes to the reasonableness of the hourly rate, as bargained for under the contract, not the time spent. Had BSC sought damages under a quantum meruit claim rather than a contract claim, a jury would have been warranted on the issues of damages. Since the trial court determined that the contract was valid and the number of hours had not been questioned, the amount owed under the contract was simply a matter of law to be determined by the trial court. Therefore, no jury question remained for determination and the trial court properly conducted the hearing to present evidence of the time charged and payments made.
 {¶ 60} Accordingly, the Kotts' fifth assignment of error is not well-taken.
 {¶ 61} VI.
 {¶ 62} In the sixth assignment of error, the Kotts argue that the trial court erred in its assessment of damages. They contend that the trial court failed to credit them with a $5,000 payment made in July 2000, failed to credit them with an offset to the Sylvester Material matters as determined in arbitration, and erred in awarding $15,000 in attorney fees for the collection matter.
 {¶ 63} BCS does not dispute that the Kotts paid an additional $5,000; the firm contends that this was credited to the account. Our review of the record indicates that in May 2000, the Kotts owed $63,478.91, including monthly two percent interest charges. A $5,000 payment is shown as credited in July 2002, on an interest calculation chart created and presented by BCS. Although the trial court removed the two percent interest charges, a credit for this $5,000 payment was not applied to the final amount awarded by the trial court Therefore, the trial court erred in not crediting the Kotts for this payment.
 {¶ 64} Next, the Kotts contend that they should have been credited with an additional $12,400 for "excessive fees" as determined by an arbitrator in the Sylvester Materials case. Although the arbitrator may have lowered the amount awarded to the Kotts for attorney fees from Sylvester Materials, this determination is irrelevant to the contract between the Kotts and BCS. The amount awarded in the arbitration simply reimbursed the Kotts for attorney fees; it did not negate the terms of the original attorney fee contract. Thus, the Kotts were not entitled to an offset of their attorney fees for the Sylvester Materials case because they were awarded only a portion of those fees in the arbitration proceedings. Therefore, the trial court did not err in failing to credit them with the $12,400 offset.
 {¶ 65} Finally, we turn to the $15,000 award of attorney fees. BCS contends that the attorney fee award constitutes damages awarded to make them whole. Generally, however, these are not considered as consequential damages, unless provided for in the contract sued upon. A prevailing party may not usually recover attorney fees. Sorin v. Bd. of Edn. (1976),46 Ohio St.2d 177, 179. Exceptions exist, and attorney fees may be allowed if: (1) a statute creates a duty; (2) an enforceable contract provision provides for an award of attorney fees; or (3) the losing party has acted in bad faith. See Sturm v. Sturm (1992), 63 Ohio St.3d 671, 675. Attorney fees are allowed where the defendant's actions are deemed to be "in bad faith, vexatious, wanton, obdurate or oppressive." Id.
 {¶ 66} Once bad faith has been established, the trial court must determine that an award of fees is necessary and proper and what is reasonable. In so doing, the trial court must consider "`* * * (1) the time and labor involved in maintaining [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of [the] litigation.'" Hutchinson v. J.C. PenneyCas. Ins. Co. (1985), 17 Ohio St.3d 195, 200, citing State, ex rel.Montrie Nursing Home, Inc., v. Creasy (1983), 5 Ohio St.3d 124, 128. Additional factors to consider are "the fee customarily charged in the locality for similar legal services" and "the amount involved and the results obtained." Villella v. Waikem Motors, Inc. (1989),45 Ohio St.3d 36, 41, citing, DR 2-106(B), Code of Professional Responsibility.
 {¶ 67} In the present case, BCS does not allege that any statute provides for its award of attorney fees and nothing in the contract provides for the payment of attorney fees. Therefore, to be upheld, the award must be supported by a showing that the Kotts acted in bad faith. We also note, that unless the court would find that the legal malpractice suit or counterclaims were frivolous, BCS may not recover for the cost of the defense of those claims, including the payment of the $5,000 deductible to its malpractice insurer. Here, although BCS requested more than $31,000 in attorney fees and consequential damages, the court only awarded $15,000. This amount is supported by the descriptions relating solely to the collection action.
 {¶ 68} Our review of the record reveals that although the facts may support a finding of bad faith or frivolousness, the trial court did not make such findings in its judgment entry. It also did not indicate that it had considered the reasonability factors required by DR-2-106(B). Therefore, we must remand for the trial court to either make a finding of bad faith, or to vacate the award of attorney fees.
 {¶ 69} Accordingly, the Kotts sixth assignment of error is well-taken in part regarding the $5,000 payment credit and attorney fee award, but is not well-taken as to the arbitration set-off credit.
 {¶ 70} VII.
 {¶ 71} BCS argues in its cross-assignment of error, that the trial court erred by not awarding pre-judgment interest at the contract rate of two percent per month.
 {¶ 72} The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A). Galmish v. Cicchini,90 Ohio St.3d 22, 33. Prior to June 2, 2004, R.C. 1343.03(A) provided, in pertinent part, that "when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *." Thus, prejudgment interest under R.C.1343.03(A) is based on the premise that a party to a contract should not retain the use of money owed under a contract when that amount is due and payable to the other contracting party. See Miller v. Gunckle,96 Ohio St.3d 359, 2002-Ohio-4932, at ¶ 28; Luft v. Perry Cty. Lumber Supply Co., 10th Dist. No. 02AP-559, 2003-Ohio-2305, at ¶ 46.
 {¶ 73} Under R.C. 1343.03(A), the trial court does not have discretion in awarding prejudgment interest. Slack v. Cropper, 143 Ohio App.3d 74,85. Therefore, while the factual determination over when the interest is to accrue may be discretionary, the award of the interest is not. SeeDwyer Elec. v. Confederated Builders (Oct. 29, 1998), Crawford App. No. 3-98-18. In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), a court must consider whether the aggrieved party has been fully compensated. Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 116. "In order to make the aggrieved party whole, the party is compensated `for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." (Emphasis added.) Mayer v. Medancic (Dec. 21, 2001), Geauga App. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, citing Royal Elec. Constr. Corp., supra, at 116. Where a party has been granted judgment on an underlying contract claim for money that is due and payable, that party is entitled to prejudgment interest as a matter of law. R.C. MasiongaleElectrical-Mechanical, Inc. v. Constr. One, Inc., 10th Dist. No. 02AP-138, 2002-Ohio-4736, at ¶ 42; WW Roofing Siding, Inc. v. H.P.Group, L.L.C., 3d Dist. No. 5-01-11, 2001-Ohio-2248, citing Dwyer Elec.,
supra.
 {¶ 74} In this case, BCS was granted judgment on the underlying contract claims for fees. Consequently, the firm was entitled to prejudgment interest. BCS argues that the rate of interest should be two percent per month as provided in the contract relating to outstanding monthly balances. We agree that BCS was entitled to the contractual two percent fees while the contract was still in effect. Nevertheless, once the firm terminated the contract with the Kotts in May 2000, the contract rate no longer applied. Nothing in the contract provided that a two percent rate would continue to apply during a collection action.
 {¶ 75} At the time of contract termination, the amount due and payable, including the contractual two percent monthly interest, was $63,478.91. Under R.C. 1343.03(A), BCS would be entitled to prejudgment interest beginning from the May 30, 2000 termination date. The interest would continue to accrue, but the Kotts must also be given credit for their July 2002 $5,000 payment. Post-judgment interest, as awarded by the court, would begin on November 23, 2003, when the trial court issued its decision on damages. Therefore, the trial court erred in not awarding pre-judgment interest.
 {¶ 76} Accordingly, BCS' assignment of error is well-taken as discussed.
 {¶ 77} The judgment of the Lucas County Court of Common Pleas is affirmed in part, and reversed in part. The Kotts' first, second, third, fourth and fifth assignments of error are not well-taken. The Kotts' sixth assignment of error is well-taken in part regarding the $5,000 payment credit and attorney fee award, but is not well-taken as to the arbitration set-off credit. BCS' sole assignment of error is well-taken regarding the award of prejudgment interest as discussed. This case is remanded to the trial court for a determination of the amount of pre-judgment interest consistent with this decision. Court costs of this appeal are assessed equally to appellants/cross-appellees and appellees/crossappellants.
Judgment affirmed in part and reversed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Lanzinger, Judges, Concur.
[1] For ease in discussion, we will refer to appellants collectively as the "Kotts."