DECISION AND JUDGMENT
{¶ 1} Appellants appeal a summary judgment issued by the Lucas County Court of Common Pleas in favor of an attorney and his law firm in a suit alleging legal malpractice. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellants are Future Lawn, Inc., a Toledo landscaping firm, and its principals, Michael E. and Gregory J. Kott. In 1995, appellants retained the services of the law firm of Eastman and Smith ("Eastman") to pursue a claim against a former joint venture partner. Appellants entered into a fee agreement with the firm wherein Future Lawn would pay one-half of the negotiated billed hourly rate, with payment of the remainder personally guaranteed by the Kotts, pending the outcome of the suit.
 {¶ 3} When appellants were unable to meet the payment schedule in the initial fee agreement, Eastman suggested a modified arrangement. The new agreement executed by appellants provided that appellants would pay the lesser of a 30 percent contingent fee or 125 percent of incurred fees on conclusion of the suit. In the new agreement the Kotts were released from their personal guarantees.
 {¶ 4} As this arrangement proceeded, appellants employed Eastman in other affairs, including the acquisition of real estate adjacent to Future Lawn's west Toledo facilities. In the process, the firm reviewed and approved an environmental report on the acquired property.
 {¶ 5} In 1997, appellants' joint-venture claim was resolved with a settlement to appellants in excess of $1 million to be paid in five installments over three years. In conformity with the modified the agreement, Eastman prepared a fee statement premised on fees plus 25 percent, the lesser of the computational options. *Page 3 
 {¶ 6} Following the settlement, appellants disputed numerous charges on Eastman's statements. On May 16, 1997, Eastman advised appellants that they were severing the attorney/client relationship. Following this, appellants engaged Jack Brady of Brady, Coyle and Schmidt to act as their general counsel.
 {¶ 7} Brady was sometime later directed to "investigate the issue of [Eastman's] fees for legal services" agreement modification. On April 22, 1998, Brady wrote Eastman, requesting a meeting. Negotiations continued over the next few months to no avail. On August 7, 1998, Brady requested that Eastman return the 25 percent negotiated fee premium. Eastman refused.
 {¶ 8} As the fee dispute continued, appellants were advised by the U.S. Army Corps of Engineers that their use of the property purchased in 1996 violated federal environmental regulations concerning wetlands. Appellants eventually absolved themselves from this violation by paying a $50,000 "in lieu" fee to a local environmental agency.
 {¶ 9} Appellants sought to recoup their loss from the wetlands fee from the firm which had authored the report that cleared the land from wetlands issues and from Eastman, whose lawyers had approved the report. To accomplish this, Jack Brady, referred the matter to someone experienced in legal malpractice cases, appellee Harold M. Steinberg, and his law firm, appellee Wagoner and Steinberg Ltd. *Page 4 
 {¶ 10} On November 23, 1999, appellees, on behalf of appellants, brought suit against the author of the wetlands report and Eastman. On January 25, 2000, appellee Steinberg amended the complaint, adding a claim that Eastman had impliedly coerced appellants to modify their fee agreement, then padded the bill. Eastman answered, denying both allegations.
 {¶ 11} Eventually, Eastman moved for summary judgment on the excessive billing claim, arguing that since the attorney/client relationship between the firm and appellants ended on May 16, 1997, and the excess fee claim was not filed until 2000, appellants had missed the one-year statute of limitations on legal malpractice. Appellants, through appellee Steinberg, responded that the fee dispute was not a malpractice claim, but based on contract with a longer statute of limitations. The trial court rejected appellants' argument and granted Eastman partial summary judgment on the fees dispute. Following this, in September, 2002, the parties negotiated a settlement on the wetlands issue. At the end, appellants executed a "global settlement," releasing Eastman from its liability for any event that occurred prior to the date of the agreement, including the fees dispute.
 {¶ 12} As this was unfolding, appellants parted company with Jack Brady and acquired other counsel. On May 30, 2000, Brady sued appellants for unpaid legal fees. Appellants responded with a separate suit against Brady, alleging that he had committed malpractice by failing to bring suit against Eastman on the excessive fees claim within the statute of limitations. *Page 5 
 {¶ 13} The record with respect to these events is not wholly clear, but it appears that Brady moved for summary judgment on the malpractice claim, arguing that appellants had not brought suit within the one-year statute of limitations. Brady prevailed on this issue and on his fees claim. The matter was affirmed on appeal. Kott Ent, Inc. v. Brady, 6th Dist. No. L-03-1324, 2004-Ohio-7160, ¶ 77.
 {¶ 14} On April 2, 2004, appellants sued appellees, alleging that appellees had committed malpractice by failing to timely bring to appellants' attention that Brady had committed malpractice by failing to file a malpractice suit within the statute of limitations on the excessive fees claim against Eastman.[1]
 {¶ 15} Following discovery, appellees moved for summary judgment, arguing that appellants failed to present evidence sufficient to create a genuine issue of material fact with respect to any of the elements of legal malpractice. According to appellees, Harold Steinberg's deposition testimony that he was expressly retained to pursue a malpractice claim against Eastman, therefore, he had no duty to find potential claims of any sort against Jack Brady, was undisputed. Absent duty there can be no breach. Moreover, appellants could not establish a causal connection between any act or omission by appellees and injury, because the Eastman modified contract was a valid novation, negating the validity of any excessive fee claim. *Page 6 
 {¶ 16} Appellants filed a memorandum in opposition to appellees' motion, but the trial court concluded that the unrefuted evidence before the court established that appellees had been engaged only to pursue a malpractice claim against Eastman and had no duty to seek or bring to appellants' attention claims outside that scope. On these conclusions, the court granted appellees' motion for summary judgment.
 {¶ 17} From this judgment, appellants now bring this appeal, setting forth the following three assignments of error:
 {¶ 18} "Assignment of Error No. 1
 {¶ 19} "The Trial Court committed prejudicial error by granting Defendants' Motion for Summary Judgment when there remained genuine issues of material fact concerning Defendants' duty to inform Plaintiffs of the existence of a claim for relief through which they could recover excessive fees charged by Eastman Smith and where Defendants were not entitled to judgment as a matter of law.
 {¶ 20} "Assignment of Error No. 2
 {¶ 21} "The Trial Court committed prejudicial error in concluding the parties had limited the scope of representation to a suit against Eastman Smith to recover for excessive fees charged by Eastman 
Smith.
 {¶ 22} "Assignment of Error No. 3
 {¶ 23} "The Trial Court committed prejudicial error in failing to find that Defendants breached a duty to inform Plaintiffs of the existence of a claim against the *Page 7 
Brady Firm relating to the harm for which Plaintiffs sought Defendants' services and in finding that there was no breach of duty as a matter of law."
 {¶ 24} We shall discuss appellants' assignments of error together.
 {¶ 25} Appellate review of a summary judgment is de novo. We independently review the proceedings, employing the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 26} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ. R. 56(C).
 {¶ 27} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ. R. 56(E); Riley v. Montgomery *Page 8 
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law.Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301, 304;Needham v. Provident Bank (1996), 110 Ohio App.3d 817, 826, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 28} "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss."Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259, syllabus.
 {¶ 29} The trial court in this matter concluded that appellees owed appellants no duty to inform them of a possible claim against Brady for missing the statute of limitations on the fee dispute. Initially, appellants argue that summary judgment was inappropriate because they presented an affidavit from a legal expert who opined that, on the facts presented, appellees had an obligation to make such a disclosure, and that appellees breached that duty. At the least, appellants insist, this affidavit sets up a question of fact which would preclude summary judgment.
 {¶ 30} "The existence of a duty in a negligence action is a question of law for the court to determine." Mussivand v. David (1989),45 Ohio St.3d 314, 318. It is the function of the court to determine whether, "* * * the law imposes upon the defendant *Page 9 
any legal duty to act or to refrain from acting for the protection of the plaintiff. This decision is always for the court." Restatement of the Law 2d, Torts (1965) 153, Section 328 B, Comment e. Accord, Keeton, Prosser and Keeton on Torts (1984) 236. Consequently, the submission of "expert" opinion on this issue is neither dispositive, nor gives rise to a factual dispute.
 {¶ 31} Next appellants insist that while an attorney may limit the scope of representation to specific legal matters, such limitations are permissible only after consultation with the client and then only with the consent of the client. Appellants maintain that the record contains no evidence that they and appellees consulted about limiting appellees' representation, nor that they consented to such limitation.
 {¶ 32} Appellants find support for their proposition that consultation and consent are required antecedent to limiting representation in several cases from foreign jurisdictions, which appellants concede are for the most part premised on the Model Rules of Professional Conduct.[2] Even though the Model Rules were not adopted in Ohio *Page 10 
until after the time relevant here, appellants argue that EC 7-8 of the Ohio Code of Professional Responsibility should dictate the same result.
 {¶ 33} "An attorney's duty to his or her client exists in relation to the scope of representation sought by the client and undertaken by the attorney." Advanced Analytics Labs. v. Kegler, Brown, Hill Ritter, 148 Ohio App.3d 440, 541, 2002-Ohio-3328, ¶ 34, citingPractical Offset, Inc. v. Davis (1980), 83 Ill. App. 3d 566. Unlike the ethical provisions in the foreign cases appellants cite, the Ohio Code of Professional Responsibility, which was effective in these matters, contains no express requirement of client consultation before limiting the scope of representation. Neither have appellants provided to us any Ohio authority giving rise to such a requirement. They only argue that EC 7-8's directive that "A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations" impliedly permits such a requirement and invite us to adopt this view. We must decline. Accordingly, we must hold that, prior to the adoption of the Model Rules, Ohio rules set no requirement that an attorney and client consult prior to limitation of the scope of representation.
 {¶ 34} This is a key point because the deposition testimony of appellee Harold Steinberg that the scope of his representation of appellants was expressly limited to handling a suit against Eastman and Smith is unrefuted. Thus appellees had no duty to look for or to bring to appellants' attention causes of action against any other individual *Page 11 
or entity. Consequently, the trial court's conclusion that appellees had no duty with respect to a suit against Brady is supported by the record.
 {¶ 35} We might also point out that appellees' argument that appellants could show no causative relationship between breach and damages has some merit. Appellees viewed the fee dispute with Eastman as being a claim on written contract, not malpractice. The trial court in the Eastman suit did not agree, but its ruling was never tested because appellants released Eastman of all claims, including the fee dispute. Malpractice is the "`professional misconduct of * * * attorneys.' Such professional misconduct may consist of either negligence or of breach of the contract of employment." Muir v. Handler Est. Management Co. (1982)4 Ohio App.3d 89, 90, quoting Richardson v. Doe (1964),176 Ohio St. 370, 372. It would seem arguable that a fee dispute, whether with a hospital or a law firm, is an action outside the professional relationship and should not be governed by the same strictures applicable to the exercise of professional judgment. In any event, appellants settled the underlying claim, arguably waiving any further ancillary action.
 {¶ 36} Accordingly, all of appellants' assignments of error are found not well-taken.
 {¶ 37} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal *Page 12 
pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR.
[1] Appellants dismissed the initial complaint, pursuant to Civ. R. 41(B), on July 26, 2004, and refiled the complaint on July 24, 2005.
[2] Lerner v. Laufer (N.J. App. 2003), 819 A.2d 471, 483 (New Jersey ethics rule expressly requires client consultation prior to limiting scope of representation.); Atty Grievance Comm. of Maryland v. Ward
(Md.App. 2006), 904 A.2d 477, 481, fn 3 (Maryland ethics rule expressly requires consultation.); Sengupta v. Wickwire (Alaska 2005),124 P.3d 748, 754, fn 38 (Alaska ethics rules expressly require consultation.);Machado v. Statewide Grievance Comm. (Conn.Super. 2004), 38 Conn. L. Rptr. 156 (Scope may be limited after consultation pursuant to Connecticut Ethics Rule.) Appellants also argue that PracticalOffset, infra, the case upon which Advanced Analytics Labs relies to define an attorney's duty, also supports their position. We disagree.Offset is about scope of representation, not consultation. *Page 1