DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of a judgment of the Lucas County Court of Common Pleas which granted in part and denied in part, appellant Core Funding Group, LLC's motion for partial summary judgment, granted in part and denied in part, appellees Diana McDonald for the law offices of Diana McDonald, P.C., and Diana McDonald, Individually's motion for summary judgment, and granted appellees Willie Gary and Gary, Williams, Parenti, Finney, Lewis, McManus Watson's motion for summary judgment against appellant. For the reasons that follow, we affirm in part, reverse in part, and remand.
 {¶ 2} Appellee Diana McDonald is an attorney who practices law in Georgia and is the sole owner of the law offices of Diana McDonald, P.C. She along with appellee law firm Gary, Williams, Parenti, Finney, Lewis, McManus Watson undertook the representation of certain clients in wrongful death litigation against ValuJet arising from an airplane crash which occurred in Florida in 1996. In July 1998, the McDonald appellees entered into a co-counsel arrangement with the Gary appellees with regard to these claims against ValuJet. As to legal fees under this arrangement, McDonald, on behalf of the law offices of Diana McDonald, and the Gary law firm agreed to share the one-third contingent fee, with the law offices of McDonald receiving 40 percent of that fee.
 {¶ 3} In the spring of 1999, based on an advertisement, the McDonald appellees sought out appellant for advances on legal fees and "case financing." On April 29, 1999, McDonald, individually, and McDonald, on behalf of the law offices of Diana McDonald, executed and delivered to appellant a business note in the principal amount of $124,000 to be paid on May 1, 2000, for the value of $100,000 to be received by McDonald imminently. Numerous other documents were executed including an "Absolute and Unconditional Guaranty/Surety," an "Offer to Purchase/Purchase Contract," and "Absolute, Unconditional, and Irrevocable Transfer Sale and Assignment," a Security Agreement and UCC Financing Statements.
 {¶ 4} On May 12, 1999, appellee Willie Gary, a Florida attorney, for the Gary law firm, executed an "Acknowledgment of Assignment" which set forth that the first $124,000 due and payable to the McDonald appellees with regards to the ValuJet case was assigned to appellant.
 {¶ 5} On May 21, 1999, appellant wired $50,000 to McDonald's account and on May 24, 1999, appellant wired an additional $50,000 to McDonald's account. The McDonald appellees were to pay appellant the principal sum of $124,000 on the maturity date of May 1, 2000.
 {¶ 6} On August 20, 1999, the McDonald appellees entered into a second transaction with appellant for another $100,000. However, appellant ultimately advanced only $75,000 to McDonald because appellant never received a signed "Acknowledgment of Assignment" from the Gary appellees for this transaction. Otherwise, the terms of this second transaction were similar to the first transaction. McDonald, individually, and McDonald, on behalf of the law offices of Diana McDonald, executed the following documents with respect to this second transaction: an Offer to Purchase; an Irrevocable Assignment; a Cognovit Promissory Note; a Security Agreement and UCC Financing Statements. Payment on this second transaction was due by McDonald to appellant on August 27, 2000.
 {¶ 7} On June 30, 2000, appellant sent to the Gary appellees a notice of amended assignment. This notice purported to advise the Gary appellees that the McDonald appellees owed appellant the sum of $219,735.35 as of June 30, 2000, and that said sum was to be paid from the legal fees due the McDonald appellees from the ValuJet case.
 {¶ 8} By August 2000, McDonald had not paid appellant the money owed under either the first or the second transaction.
 {¶ 9} On August 11, 2000, appellant filed a complaint on the cognovit promissory note that was part of the first transaction. On August 30, 2000, appellant filed a complaint on the cognovit promissory note that was part of the second transaction. The trial court subsequently consolidated these cases.
 {¶ 10} In April 2001, the ValuJet case settled and the Gary appellees issued a check, in the amount of $225,000, to the McDonald appellees for attorney fees. Appellant was not paid any funds for the first or second transaction with the McDonald appellees.
 {¶ 11} On September 19, 2003, appellant filed its second amended complaint alleging breach of contract by the McDonald appellees and the Gary appellees as to the first transaction; breach of contract by the McDonald appellees as to the second transaction; breach of contract and violation of security instruments by the Gary appellees; fraud by the McDonald appellees; and defalcation by the McDonald appellees. In the second amended complaint, as well as its October 4, 2004 motion for partial summary judgment, appellant sought prejudgment interest on the principal amounts on the two respective cognovit notes executed by the McDonald appellees. Appellant did so by requesting a judgment against the McDonald appellees on the breach of contract claims in the amount of the respective principals plus interest at the rate provided in the respective cognovit notes from the day each of the respective principal amounts were due. On September 30, 2003, the Gary appellees filed an answer and cross-claim for indemnification and contribution from the McDonald appellees.
 {¶ 12} On cross-motions for summary judgment, on May 2, 2005, the trial court: (1) granted summary judgment to appellant on its two breach of contract claims against the McDonald appellees "in the amount of $199,000 plus interest, costs and attorney fees;" (2) granted summary judgment to the McDonald appellees on appellant's fraud and defalcation claims against them and dismissed these claims with prejudice; (3) granted summary judgment to the Gary appellees on appellant's breach of contract and violation of security instruments claims against them and dismissed these claims with prejudice; (4) denied as moot, the Gary appellees' motion for summary judgment on their cross-claims against the McDonald appellees. An August 19, 2005, judgment entry with final appealable order language confirmed all the prior summary judgment orders.
 {¶ 13} Appellant appeals this decision and sets forth the following assignments of error:
 {¶ 14} "A. Whether the trial court erred when it failed to award Core prejudgment interest on the judgment awarding damages to Core pursuant to the terms of the contracts and the interest rates set forth in the contracts, as required under Section1343.03(A) of the Ohio Revised Code.
 {¶ 15} "B. Whether the trial court erred in denying Core summary judgment on its claim for defalcation against McDonald; whether the trial court erred in granting McDonald summary judgment against Core on Core's claim against McDonald for defalcation.
 {¶ 16} "C. Whether the trial court erred in denying Core summary judgment on its claims against Gary and GWP for breach of contract and violation of the security instruments and assignments; whether the trial court erred in granting Gary and GWP summary judgment against Core on its claims against Gary and GWP for breach of contract and violation of the security instruments and assignments
 {¶ 17} "D. Whether the trial court erred in granting McDonald summary judgment against Core on Core's claim for fraud against McDonald."
 {¶ 18} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996),75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 19} In its first assignment of error, appellant asserts that, pursuant to R.C. 1343.03(A), it is entitled to prejudgment interest at the rate provided in the two subject cognovit notes the McDonald appellees executed. The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A). Galmish v. Cicchini (2000),90 Ohio St.3d 22, 33. Prior to June 2, 2004, R.C. 1343.03(A) provided, in pertinent part, as follows:
 {¶ 20} "* * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."
 {¶ 21} We have held that prejudgment interest under R.C.1343.03(A) is based on the premise that a party to a contract should not retain the use of money owed under a contract when that amount is due and payable to the other contracting party.Kott Enterprises, LTD v. Brady, 6th Dist. No. L-03-1343,2004-Ohio-7160 at ¶ 72 citing Miller v. Gunckle,96 Ohio St.3d 359, 2002-Ohio-4932, at ¶ 28; Luft v. Perry Cty. Lumber SupplyCo., 10th Dist. No. 02AP-559, 2003-Ohio-2305, at ¶ 46. Further, under R.C. 1343.03(A), the trial court does not have discretion in awarding prejudgment interest. Kott at ¶ 73 citing Slack v.Cropper, 143 Ohio App.3d 74, 85, 2001-Ohio-8894. Therefore, while the factual determination over when the interest is to accrue may be discretionary, the award of the interest is not.Kott at ¶ 73 citing Dwyer Elec. v. Confederated Builders
(Oct. 29, 1998), 3d Dist. No. 3-98-18. In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), a court must consider whether the aggrieved party has been fully compensated. Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 116. "In order to make the aggrieved party whole, the party is compensated `for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." (Emphasis added.)Mayer v. Medancic (Dec. 21, 2001), 11th Dist. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, citing Royal Elec. Constr. Corp.,
at 116. "Where a party has been granted judgment on an underlying contract claim for money that is due and payable, that party is entitled to prejudgment interest as a matter of law." Kott at ¶ 73 citing Masiongale Electrical-Mechanical, Inc. v. Constr. One,Inc., 10th Dist. No. 02AP-138, 2002-Ohio-4736, at ¶ 42; W WRoofing Siding, Inc. v. H.P. Group, L.L.C., 3d Dist. No. 5-01-11, 2001-Ohio-2248, citing Dwyer Elec. Further, when the parties enter into a written agreement that specifies the interest rate, the statutory rate does not apply. Water WorksSupplies, Inc. v. Grooms Construction Co., Inc., 2005-Ohio-1292, 4th Dist. No. 04CA12 at ¶ 31. Prejudgment interest has been awarded on cognovit notes. See Prinz v. Horvat (Nov. 21, 1990), 9th Dist. No. 14670.
 {¶ 22} In this case, appellant was granted judgment on the underlying contract claims under the terms of the cognovit notes in the principal amount of "$199,000 plus interest." Presumably, this means interest from the date of judgment. However, pursuant to the language of R.C. 1343.03(A), appellant was entitled to prejudgment interest as well at the rate of interest provided in the notes. Appellant's first assignment of error is well-taken.
 {¶ 23} In its second assignment of error relative to appellant's defalcation claim against the McDonald appellees, appellant argues that the transactional documents signed by McDonald created an express fiduciary relationship between appellant and the McDonald appellees relative to any of the pledged co-counsel attorney fees that may have come into her possession. Further, appellant contends that McDonald breached her duty as a fiduciary and trustee of these funds when upon her receipt of these funds from the Gary appellees, she converted these funds to her own use instead of placing them into the Southtrust Bank account according to the terms of the Security Agreements.
 {¶ 24} Long associated primarily with bankruptcy cases, Black's Law Dictionary defines defalcation as: "1. EMBEZZLEMENT. 2. Loosely, the failure to meet an obligation; a nonfraudulent default. * * *" Black's Law Dictionary (8 Ed. 2004) 448. In turn, embezzlement is defined as: "the fraudulent taking of personal property with which one has been entrusted, esp. as a fiduciary." Id. at 561. Likewise, the bankruptcy cases hold that defalcation requires: 1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss. In re Garver
(C.A.6 1997), 116 F.3d 176, 178.
 {¶ 25} We have noted in the context of a case analyzing the relationship between investors and a bank that "[t]he Supreme Court of Ohio has defined a `fiduciary relationship' as `one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Zammit v. Society National Bank (1996),115 Ohio App.3d 543, 555 quoting In re Termination of Employment ofPratt (1974), 40 Ohio St.2d 107, 115. Further, "[g]enerally, the relationship between a creditor and debtor is not a fiduciary one, but is one governed by freedom of contract." Needham v. TheProvident Bank (1996), 110 Ohio App.3d 817, 828 citing Stone v.Davis (1981), 66 Ohio St.2d 74, 78. "While the particular facts of each case must be evaluated, when the facts are undisputed a court may reach a legal conclusion regarding whether or not a fiduciary relationship exists." Zammit at 555 citing Indermillv. United Savings (1982), 5 Ohio App.3d 243, 244-246 andWakeman Oil Co., Inc. v. Citizens Natl. Bank of Norwalk (Sept. 13, 1996), 6th Dist. No. H-95-045.
 {¶ 26} We conclude that even when all the evidence presented for summary judgment is construed most favorably for appellant, reasonable minds could reach only the conclusion that no fiduciary relationship existed between appellant and the McDonald appellees in this case. McDonald originally got information about appellant's case financing services from an advertisement. Similar to the parties in Zammit, McDonald and appellant were bargaining at arm's length regarding the transactions, and were acting to protect their own business interests. No fiduciary relationship existed at the time the transactions were closed. Appellant's second assignment of error is not well-taken.
 {¶ 27} In its third assignment of error relative to appellant's claim against the Gary appellees for breach of contract, appellant asserts that the acknowledgement signed by Gary was an inducement for appellant to enter into the contract with the McDonald appellees. Appellant asserts that without such acknowledgement, it would not have entered into the transaction with McDonald. The Gary appellees respond that they did not enter into a valid contract with appellant; they did not breach any obligation owing to appellant; and the statute of frauds acts as a bar to any liability of the Gary appellees for McDonald's obligations on the second note for which there was no writing executed by Gary.
 {¶ 28} To prove the existence of a contract, a party must establish the essential elements of a contract: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) an exchange of consideration; and (5) certainty as to the essential terms of the contract. Juhasz v. Costanzo (2001), 144 Ohio App.3d 756, 762. A contract is formed when there is mutual assent and consideration. Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11. Consideration may consist either in a detriment to the promisee or a benefit to the promisor. Ford v. Tandy Transp., Inc.
(1993), 86 Ohio App.3d 364, 384. A gratuitous promise is not enforceable under a contract theory even if it is written and evidences an intent by the promisor to be bound. Carlisle v. T R Excavating, Inc. (1997), 123 Ohio App.3d 277, 283.
 {¶ 29} In granting summary judgment against appellant on its breach of contract claim against the Gary appellees, the trial court found that there was no valid contract between appellant and the Gary appellees because there was no exchange of consideration. The trial court found that the acknowledgement that the Gary appellees signed was nothing more than a gratuitous promise. We agree. Summary judgment was properly granted to the Gary appellees on appellant's claim of breach of contract.
 {¶ 30} However, appellant's claim against the Gary appellees for violation of security instruments and assignments is another matter. Relative to this claim, appellant asserts that, pursuant to R.C. 1309.37(C), upon receipt of the attorney fees in the underlying ValuJet case, Gary became an account debtor liable to appellant as assignee in the amount of McDonald's co-counsel portion of the fees. Appellant cites First Bank of Marietta v.Roslovic Partners, Inc. (1999), 86 Ohio St.3d 116. In response, the Gary appellees assert that Gary is not an account debtor within the Uniform Commercial Code ("UCC") Article 9 definition and the subject transaction is excluded from the scope of Article 9. Finally, the Gary appellees contend that appellant's claims against them are unenforceable as against public policy.
 {¶ 31} Inasmuch as appellant's claim in its third assignment of error is predicated upon the application of R.C. 1309.37(C), which is part of the UCC as adopted in Ohio, the threshold legal issue in this case is whether those provisions apply herein. Former[1] R.C. 1309.04 (UCC 9-104) provides the exclusions to secured transactions as follows:
 {¶ 32} "Sections 1309.01 to 1309.50 of the Revised Code do not apply:
 {¶ 33} "* * *
 {¶ 34} "(B) to a lien given by statute or other rule of law for services or materials except as provided in section 1309.29
of the Revised Code on priority of such liens; or
 {¶ 35} "(C) to a transfer of a claim for wages, salary, or other compensation of an employee; or
 {¶ 36} "* * *
 {¶ 37} "(J) to a transfer in whole or in part of any claim arising out of a tort; * * *"
 {¶ 38} Regarding application of these exclusions to the transactions in the present case, the parties have cited no cases on point and a review of state law by this court found no Ohio cases addressing this issue. We will examine each provision, turning to federal and foreign state case law that has analyzed similar issues. In the present case, relative to R.C. 1309.04(B), citing a common law rule that an attorney has a special or charging lien upon an award obtained for a client, the Gary appellees contend that the attorney fees owed to McDonald under the contingency fee agreement between McDonald and Gary was not subject to assignment by McDonald. However, in Re: PNC Bank,Delaware v. Berg (Del. 1997), 45 UCC Rep.Serv.2d 27, the Superior Court of Delaware rejected such an argument. The court held that a bank can claim a security interest in the hourly billing and contingent fee contracts of a law firm-debtor even though the underlying obligation, the attorney's lien for services rendered, is not subject to Article 9. The court found that the "assigned"[2] contract rights are subject to Article 9.
 {¶ 39} Regarding R.C. 1309.04(C), the assignment of McDonald's right to receive fees from the ValuJet case does not fit the definition of "a transfer of a claim for wages, salary, or other compensation of an employee," pursuant to division (C), since McDonald is not an employee of the Gary firm. Courts have found the employment status critical to the application of this exclusion. See In re Rankin (W.D.Pa. 1989), 102 B.R. 439,443 (Debtor was independent contractor rather than employee, thus this UCC exclusion did not apply.)
 {¶ 40} Finally, regarding R.C. 1309.04(J), the Gary appellees argue that the assignment of the contingent fee owed to McDonald on the ValuJet case represents a transfer of proceeds of a tort claim. The trial court agreed. The Gary appellees cite BluxomeStreet Associates v. Fireman's Fund Insurance Co. (1988),206 Cal.App.3d 1149, in support. In Bluxome, a legal malpractice claimant granted to a law firm a security interest in his legal malpractice action to secure payment for past and future legal services rendered by the law firm for the benefit of the legal malpractice claimant, unrelated to the legal malpractice action. Thus, the lien granted to the law firm was not an equitable or implied attorney's lien, but rather a contractual lien. Id. at 1154; PNC Bank. Citing UCC language similar to R.C. 1309.04(J), the court held that the security agreement granted to the law firm a lien on the tort victim's interest in the tort action. Therefore, Article 9 of the UCC did not apply to the security interest or lien at issue.
 {¶ 41} However, Bluxome is distinguishable from the present case. In Bluxome, the assignor-debtor was the tort claimant and the right transferred in the assignment directly "arose out of" the tort action. In the present case, the assignor-debtor is not the tort claimant in the ValuJet case. Instead, the assignor-debtor is an attorney who entered into a fee sharingcontract with another attorney. Indeed, the language of R.C.1309.04(J) that the UCC provisions do not apply to "a transfer in whole or in part of any claim arising out of a tort," apparently recognizes the general common law rule that tort claims are not assignable. In re Bell Fuel Corp. (E.D.Pa. 1989), 99 B.R. 602,608. However, McDonald transferred her contractual rights under the contingent fee sharing agreement. The underlying litigation just happened to be a tort. R.C. 1309.04(J) does not apply to exclude McDonald's assignment to appellant from the provisions of the UCC as provided in R.C. 1309.01 to 1309.50.
 {¶ 42} Since we have determined that Article 9 of the UCC applies, we turn to appellant's claim under former R.C.1309.37(C) which provides:
 {¶ 43} "The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. * * *"
 {¶ 44} Former R.C. 1309.01(A) provides the following definitions:
 {¶ 45} "(1) `Account debtor' means the person who is obligated on an account, chattel paper, or general intangible."
 {¶ 46} The issue is whether the McDonald appellees' contract rights on the underlying fee sharing agreement they had with the Gary appellees can be viewed as an "account, chattel paper, or general intangible," and thus, whether the Gary appellees can be viewed as an "account debtor." Former R.C. 1309(A) defines the following terms:
 {¶ 47} "(2) `Chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or lease of specific goods * * *. When a transaction is evidenced both by such a security agreement or lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper.
 {¶ 48} "(15) `Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has beenearned by performance.
 {¶ 49} "(16) `General intangible' means any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments, and money. * * *" (Emphasis added.)
 {¶ 50} In PNC Bank, the court concluded that contract rights are within the UCC definition of account. PNC Bank at 9;In re Holstein Mack Klein (Bkrtcy.N.D.Ill. 2000), Nos. 97 B 29997, 99 A 181 (contingency fee contract falls within definition of an "account".)
 {¶ 51} Further, turning to Ohio case law, in First Bank ofMarietta v. Roslovic Partners, Inc., 86 Ohio St.3d 116,1999-Ohio-89, the Supreme Court of Ohio applied R.C. 1309.37(C) to assigned construction contract rights. In Roslovic, a general contractor entered into a contract for work by a subcontractor. Subsequently, the subcontractor sought financing from a bank. Before it would make the loan to the subcontractor, the bank required the subcontractor to assign its accounts receivable on its contract with the general contractor to the bank. The subcontractor made this assignment and it was undisputed that the bank sent notice of this assignment to the general contractor as required by R.C. 1309.37(C). Subsequently, the general contractor paid a total of $159,972.22 solely and directly to the subcontractor. The bank brought a claim alleging that the general contractor had violated the assignment of receivables between the bank and the subcontractor by paying sums directly to the subcontractor. The court held that pursuant to R.C. 1309.37(C), an assignee may exercise collection rights against an account debtor if the account debtor receives (1) an indication that the account has been assigned, (2) a specific direction that the payment is to be made to the assignee rather than the assignor, and (3) a reasonable identification of the rights assigned. Roslovic at 118-19, citing Surety S. L. Co.v. Kanzig (1978), 53 Ohio St.2d 108. The court concluded that the general contractor, as the account debtor, was liable to the bank, as assignee, for payments made to the subcontractor, as assignor, after the general contractor had received sufficient notice of the assignment. Roslovic at 119.
 {¶ 52} The Gary appellees argue that they are not the account debtor, but rather, the party obligated on an account in the present case is the client who received McDonald's legal services in the ValuJet case. This ignores Roslovic's implicit finding that the subcontractor-assignor's accounts receivable on an underlying construction contract with the general contractor-account debtor was an "account." Although the court did not analyze the Article 9 exclusions in R.C. 1309.04 or the definitions in R.C. 1309.01, implicit in the holding ofRoslovic is the conclusion that the subcontractor-assignor's accounts receivable on the underlying construction contract with the general contractor-account debtor falls within the purview of Article 9. Likewise, and pursuant to PNC Bank, McDonald's accounts receivable on the underlying fee sharing agreement with Gary falls within the purview of Article 9 and R.C. 1309.37(C). Gary is the account debtor, McDonald is the assignor and appellant is the assignee. Gary, as the account debtor, was liable to appellant, as assignee, for payments made to McDonald, as assignor, if Gary received sufficient notice of the assignment. The notice would include (1) an indication that the contract rights had been assigned, (2) a specific direction that the payment is to be made to appellant rather than the McDonald appellees, and (3) a reasonable identification of the rights assigned.
 {¶ 53} With respect to notice of assignment on the first transaction, on May 12, 1999, Gary executed an acknowledgement that met all these requirements. With regard to the second transaction, we find that although the Gary appellees did not return a signed acknowledgement, based on the record, reasonable minds could only conclude that they received sufficient notice.
 {¶ 54} Under the general definitions of the UCC, an organization "receives" a notification when it is delivered to any place "held out by [it] as the place for receipt of such communications." R.C. 1301.01(Z)(2); Zenfa Labs, Inc. v. BigLots Stores, Inc., 10th Dist. No. 02AP-691, 2003-Ohio-628, at ¶ 56. A notification received by an organization is effective from the time it would have been brought to the attention of the individual conducting the transaction "if the organization had exercised due diligence." R.C. 1301.01(AA); Zenfa Labs, at ¶ 56. In National City Bank v. Victor Building Company (Oct. 20, 2000), 6th Dist. No. L-99-1311, we found that even a lawsuit alleging the assignment can constitute compliance with the notice requirements of R.C. 1309.37(C) and Surety.
 {¶ 55} Unlike Zenfa Labs where summary judgment for the account debtor was improper, there is no contradictory evidence in the present case regarding receipt of the notice of assignments. Regarding the second transaction, appellant presented evidence that it had duly faxed and sent by ordinary U.S. mail, notice of the "amended" assignment and UCC financing statements to the Gary appellees. Further, these notices were sent long enough before the Gary appellees made payment to the McDonald appellees that, with the exercise of organizational due diligence, the assignment should have come to the attention of persons charged with assuring payment to the correct party. In contrast to Zenfa Labs, the Gary appellees presented no evidence that they had not, in the course of the usual business routine in such matters, received, logged, or filed the notice sent by appellant. Instead, in his affidavit, Gary merely states that the Gary firm inadvertently paid the McDonald appellees rather than appellant. Reasonable minds can only conclude that the Gary appellees were notified that McDonald's rights under the contingent fee sharing agreement were assigned to appellant.
 {¶ 56} Finally, the Gary appellees argue that appellant's claim against them is against public policy. In response, appellant asserts that the Gary appellees did not assert this affirmative defense in their answer, and therefore, waived it. Civ.R. 8(C) provides:
 {¶ 57} "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality,
injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * *" (Emphasis added.)
 {¶ 58} Civ.R. 8(C) does not specifically include a violation of public policy as an affirmative defense that must be pled. Further, the Gary appellees did plead as an affirmative defense "illegality of contract." Where the performance of a contract violates a statute or act, public policy may prevent the enforcement of its obligations. Countrymark Cooperative, Inc. v.Smith (1997), 124 Ohio App.3d 159, 164 citing DiversifiedProperty Corp. v. Winters Natl. Bank Trust Co. (1967),13 Ohio App.2d 190. Parties may contract as they please, so long as the resulting terms and conditions of the contract do not offend public policy and are not illegal. First Federal Sav. LoanAssn. of Toledo v. Perry's Landing, Inc. (1983),11 Ohio App.3d 135. Thus, illegality of a contract and violation of public policy can be closely aligned concepts. Therefore, we will assume, arguendo, that the Gary appellees' public policy argument was not waived. Even so, the argument is not persuasive.
 {¶ 59} "`Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like.'" Handel's Ent., Inc. v. Wood, 7th Dist. No. 04 MA 238, 05 MA 70, 2005-Ohio-6922, at ¶ 65 quoting Eagle v. Fred MartinMotor Co., 157 Ohio App.3d 150, 2004-Ohio-829, at ¶ 64. Furthermore, it has been stated that in addressing public policy arguments, courts must be mindful that freedom to contract is fundamental. Handel's citing Blount v. Smith (1967),12 Ohio St.2d 41, 47. An agreement freely entered into between the parties should not be lightly disregarded unless it clearly contravenes an established public interest. Handel's citingZivich v. Mentor Soccer Club, Inc. (Apr. 18, 1997), 11th Dist. No. 95-L-184 and Baltimore Ohio Southwestern Ry. Co. v. Voigt
(1900), 176 U.S. 498.
 {¶ 60} In support of their public policy argument, the Gary appellees cite an Advisory Opinion issued by the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline, Opinion 2004-2. This court notes that this opinion as well as the two advisory opinions cited by appellant, 2001-3 and 99-6, put into question the ethics of the attorneys' conduct in the acknowledgement and assignment of an attorney's interest in the ValuJet litigation to appellant funding corporation. However, as noted at the end of each opinion, the advisory opinions are "informal, nonbinding opinions in response to prospective or hypothetical questions" regarding the application of professional rules relative to practicing attorneys in Ohio. The attorneys involved may yet be disciplined by the bar in their own states.
 {¶ 61} Further, in PNC Bank, the court rejected public policy based arguments of the account debtor-law firm that it is "inappropriate" for a lender to have a security interest in an attorney's contract rights. The court stated as follows:
 {¶ 62} "* * * [I]t is routine practice for lenders to take security interests in the contract rights of other business enterprises. A law firm is a business, albeit one infused with some measure of the public trust, and there is no valid reason why a law firm should be treated differently than an accounting firm or a construction firm. The Rules of Professional Conduct ensure that attorneys will zealously represent the interests of their clients, regardless of whether the fees the attorney generates from the contract through representation remain with the firm or must be used to satisfy a security interest. Parenthetically, the Court will note that there is no suggestion that it is inappropriate for a lender to have a security interest in an attorney's accounts receivable. It is, in fact, a common practice. Yet there is no real `ethical' difference whether the security interest is in contract rights (fees not yet earned) or accounts receivable (fees earned) in so far as Rule of Professional Conduct 5 .4, the rule prohibiting the sharing of legal fees with a nonlawyer, is concerned. It does not seem to this Court that we can claim for our profession, under the guise of ethics, an insulation from creditors to which others are not entitled." PNC Bank at fn. 5.
 {¶ 63} We agree that at this juncture, we cannot claim for appellees, under the guise of ethics, an insulation from appellant-creditor.
 {¶ 64} Based on the foregoing, summary judgment to the Gary appellees on appellant's claim of violation of security instruments was not proper. Instead, summary judgment must be granted to appellant on its claim against the Gary appellees for violation of security instruments. Appellant's third assignment of error is not well-taken relative to any breach of contract claim against the Gary appellees, but is well-taken relative to its claim against the Gary appellees for violation of security instruments. It follows that the Gary appellees' motion for summary judgment on their cross-claims against the McDonald appellees for indemnification and contribution is not moot as the trial court ruled.
 {¶ 65} In appellant's fourth assignment of error relative to its fraud claim against McDonald, appellant argues that whether McDonald purposely concealed a material fact from appellant during the application process and appellant's reliance upon the concealment are genuine issues of material fact. Specifically, appellant contends that McDonald failed to disclose a $50,000 tax debt by leaving out certain pages of her otherwise completed application.
 {¶ 66} In Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49, the Ohio Supreme Court set forth the elements of fraud as follows:
 {¶ 67} "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting proximately caused by the reliance."
 {¶ 68} Fraud is never presumed, but must instead be affirmatively proved. Watkins v. Cleveland Clinic Foundation
(1998), 130 Ohio App.3d 262.
 {¶ 69} We agree with the trial court that the record fails to raise any question of fact relative to McDonald's intent to mislead and appellant's justifiable reliance. There was no evidence presented regarding McDonald's intent in allegedly leaving out portions of the application. Regarding appellant's reliance on McDonald's application, in his deposition, Thomas Emmick, president of appellant corporation, testified that the inducement for entering into the transactions with the McDonald appellees was the fees from the pending ValuJet case and, "Willie Gary's credibility and not Diana McDonald." (Emphasis added.) Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 70} Based on the foregoing, appellant's first assignment of error and the portion of appellant's third assignment of error relative to its claim of violation of security instruments is well-taken. The remaining assignments of error are not well-taken. Accordingly, the judgment of the Lucas County Court of Common Pleas denying prejudgment interest to appellant on its breach of contract claim against the McDonald appellees is reversed. The judgment granting summary judgment to the Gary appellees on appellant's claim of violation of security instruments pursuant to R.C. 1309.37(C) and the judgment denying the Gary appellees summary judgment on their cross-claim for indemnification and contribution against the McDonald appellees is reversed. This case is remanded to the trial court for further proceedings consistent with this decision and judgment entry regarding prejudgment interest and the Gary appellees' contribution and indemnification claims against the McDonald appellees. The judgment is affirmed in all other respects. The McDonald appellees and the Gary appellees are ordered to each pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED, IN PART, AND AFFIRMED, IN PART.
Pietrykowski, J., Singer, P.J., Skow, J., Concur.
[1] Former R.C. 1309.37 and 1309.04 were repealed effective July 1, 2001 by S.B. 74.
[2] PNC Bank involved a somewhat complicated fact pattern in which some attorneys left the debtor law firm and subsequently started their own firm, taking some case files with them. The debtor law firm had agreed to "forego any claim for fee recovery on contingent fee cases which the departing attorneys now have with them." PNC Bank at 2.